IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MATTHEW CARROLL,

                       Plaintiff,                    OPINION AND ORDER

     v.

                                                09-cv-29-slc

STRYKER CORPORATION,
a foreign corporation,

                       Defendant.

---

      This is a removal case in which plaintiff Matthew Carroll is suing defendant Stryker Corporation for unpaid wages and other compensation under Wis. Stat. Ch. 109, quantum meruit and unjust enrichment relating to his employment as a sales person. On February 13, 2009, the parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

      Before the court is Stryker's motion for summary judgment on all of Carroll's claims. Dkt. 15. Carroll has withdrawn his wage claim under Wis. Stat. Ch. 109, admitting that he is not an employee as that term is defined in the statute. Stryker contends that because its 2008 compensation plan constituted a contract with Carroll, Carroll has no equitable relief available. Carroll disagrees, insisting that the compensation plan is not a contract. In the alternative, he has moved for leave to amend his complaint to add a claim of breach of contract. Dkt. 46. Stryker opposes the amendment on the grounds that there was undue delay, it would result in undue prejudice and any amendment would be futile.

      Because the compensation plan constitutes a valid contract between the parties, defendant is entitled to summary judgment with respect to plaintiff's claims for equitable relief. I also find that justice does not require granting Carroll leave to amend his complaint because

he waited too long, and granting leave at this time would cause undue prejudice to Stryker. Therefore, the motion for leave to amend will be denied and this case will be closed.

For the purpose of deciding the motion for summary judgment, I find from the parties' proposed findings of fact that there is no genuine issue as to the following material facts.

UNDISPUTED FACTS

**I.  The Parties and the Employment Relationship**

Plaintiff Matthew Carroll is a resident of Fitchburg, Wisconsin.  Defendant Stryker Corporation is a Michigan corporation with its principal offices located in Kalamazoo.  In January 2003, Stryker hired Carroll as a marketing associate.  Carroll signed an employment application that stated in part:

> I agree to conform to the rules and regulations of the company, and understand that if hired I will be a terminable-at-will employee, and that my employment and compensation can be terminated with or without cause and with or without notice, at any time, at the option of either the company or myself.

On February 17, 2003, Carroll signed an employee handbook receipt that stated in part:

> Except for the paragraph below, I understand that nothing contained in the Handbook constitutes an employment contract between the Company and me.  I understand that my employment can be terminated with or without cause and with or without notice by the Company or by me.
>
> *   *   *
>
> I understand that any previous contracts, policies, or representations relating to my employment are no longer in effect and have been replaced by the Handbook.  I understand that the purpose of the Handbook is to inform me of the Company's policies and rules and that no one is authorized to make changes in the terms of this Handbook, except through written revision

2

> authorized by Stryker Leibinger's General Manager. Stryker Leibinger may add, change, or rescind any of the policies, benefits, or practices listed, with or without notice by me.

In January 2005, Stryker promoted Carroll to sales representative in its instrument division and assigned him a sales territory in Peoria, Illinois. Effective January 1, 2006, Stryker transferred Carroll to Wisconsin and appointed him sales representative in its Navigation Division (a subdivision of the instrument division) for the company's northern region. The Navigation Division is responsible for the manufacturing, marketing and sales of medical instruments used in computer-assisted surgery.

Stryker employed Carroll in a commissioned sales capacity. In a memorandum to the Navigation sales team dated January 10, 2008, Brad Bailey, the sales director, set forth Stryker's 2008 compensation plan for sales representatives. The plan included these provisions:

- $6,000 monthly draw for the first six months.

- Starting with month seven, a sales representative failing to cover his draw in commissions in a given month would incur a draw deficit recoverable by Stryker.

- Commissions were to be paid monthly on orders above the draw.

- Compensation was determined as a percentage of order amounts based on discount levels.

- Commissions were to be paid on all orders.

- Stryker reserved the right to change the compensation plan at any time to more effectively drive their goals.

**II. Plaintiff's Performance**

In 2006, Carroll achieved only 45.4% of his sales quota.  His supervisor, William McCrary, sent him a letter dated January 17, 2007:

> . . . I know that no one is more disappointed than you with the outcome of 2006 in the Milwaukee Navigation Territory, and I know you realize the importance of having the Milwaukee Navigation Territory on track in all performance measurement categories to ensure the success of the Great Plains Region and Stryker Navigation.

> . . . Failure to achieve YTD quota by the end of 1st quarter 2007 or present a positive assessment of the above referenced metrics during this period of time could result in our immediate consideration of a territory split and a formulation of new and ongoing performance measurement categories at that time.

At the end of the third quarter of 2007, Carroll had met only 35.8% of his sales quota for the year.  McCrary sent Carroll a letter dated November 6, 2007 in which he warned Carroll that "[f]ailure to meet this requirement at the end of the year will result in further action, potentially including termination."

On January 16, 2008, McCrary sent Carroll a letter, indicating that he had failed to meet quota in 2007 and stating in part:

> The year 2007 is behind us and your sales results were a disappointing . . . 44.8% percent-to-quota. This places your current performance at a less-than-effective level for the second year in a row. . . .

> Due to your historical performance levels, your performance and employment status will be evaluated on a quarterly basis in 2008 instead of annual basis and we are requiring you be at a minimum of 100% YTD PTQ at the end of each quarter of 2008.  Failure to meet this requirement may result in termination.

### III.  The Aurora Contract

On March 31, 2008, Carroll procured an order from Aurora Health Care for equipment in the total amount of $299,008.13 and e-mailed the purchase order to McCrary.  Although the purchase order was legitimate, McCrary noticed that Aurora had attached lengthy, detailed terms and conditions.  Aurora had asked for 120 days within which to pay the order in full after Stryker shipped the order.  This arrangement is referred to as a "net 120" payment term.  Typically, Stryker requires a customer to pay for the product within 30 days after it is shipped.  If a payment term exceeded 45 days, Stryker usually had a finance company finance the transaction.

Because McCrary was not sure if Aurora's terms and conditions would be acceptable, he forwarded them to Stryker's finance department—including Nikki Hoenes, David Kilgo (Stryker's Regional Finance Manager) and Wendi Ruggles.  Hoenes told McCrary via e-mail on March 31 that a net 120 payment term was not acceptable and that Aurora would have to use a financing or leasing arrangement for any payment term over 30 days.  Hoenes advised McCrary that someone would have to "review the very lengthy terms" in the purchase order "to ensure none of them contradict the lease agreement terms and conditions."  She also noted that Aurora would have to sign certain documents in order to set up a financing or leasing arrangement.

Kilgo and Kris Vincent, Stryker's Director of Finance for the Navigation Division, then entered the e-mail exchange.  Kilgo immediately contacted Aurora about getting the finance documents signed.  However, given the late hour on March 31, Aurora had no one around with authority to sign on such a large deal.  Kilgo e-mailed Carroll, McCrary and Vincent to inform

them that he had been told that Aurora representatives would be available to sign the next day (April 1). McCrary extended Carroll's quarterly quota deadline until the end of business on April 1, 2008, so that signatures could be obtained from Aurora on the financing documents. Carroll spoke with Roger Peoples of Aurora on the night of March 31 about signing the purchase order, but Peoples refused to do so.

By mid-day on April 1, McCrary learned that Aurora did not finance a purchase from Stryker and assumed that it had no intention of doing so because it was seeking a cash deal with a 120-day payment term. Carroll told McCrary in an e-mail that he agreed with that conclusion. In the afternoon of April 1, McCrary drafted a letter to Aurora's chief financial officer and asked Carroll to forward it to her by e-mail. Recognizing that Aurora was unwilling to sign a financing agreement, McCrary offered a compromise, stating that Stryker would accept a signed purchase order assignment in lieu of finance documents. However, Aurora refused to sign the purchase order assignment. Later that afternoon, Kilgo e-mailed Carroll and told him that it would take a week to amend Aurora's purchase order in order for the lender to agree to extend financing. McCrary told Carroll that he was sorry that things had not worked out.

**IV. Termination**

Although the parties dispute many of the details surrounding plaintiff's termination, they agree that on April 2, 2008, McCrary drafted and sent Carroll a letter terminating his employment effective April 2. That day, Carroll asked McCrary to treat the Aurora order as a contingent order, Stryker's term for an unofficial order that had sufficient documentation to establish a realistic chance the order would be completed on a timely basis. A contingent order

would have allowed Carroll to receive credit toward his sales quota and keep his job but would not have entitled him to a commission until the purchase order was final.  Because he expected that Stryker ultimately would close the deal with Aurora, Carroll also asked McCrary to consider paying him the commission in the event that he was terminated.  Stryker declined to deem Aurora's order a conditional order.

ANALYSIS

## I.  Legal Standard

Under Fed. R. Civ. P. 56, summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  In ruling on a motion for summary judgment, the admissible evidence presented by the nonmoving party must be believed and all reasonable inferences must be drawn in the nonmovant's favor.  However, a party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires a trial.  *Hunter v. Amin*, 583 F.3d 486, 489 (7th Cir. 2009); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  The applicable substantive law will dictate which facts are material.  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).  The court's function in a summary judgment motion is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).

Because the parties do not dispute that Wisconsin law applies in this case, I need not conduct a choice of law analysis.  *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283 (7th Cir.

2002); *State Farm Mutual Automobile Insurance Co. v. Gillette*, 2002 WI 31, ¶ 51, 251 Wis. 2d 561, 641 N.W.2d 662.

## II. Equitable Claims

Carroll has asserted the equitable claims of quantum meruit and unjust enrichment, which are "quasi-contractual forms of relief" with "distinct elements of proof and measure of damages." *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 476 (7th Cir. 2009) (citing *Ramsey v. Ellis*, 168 Wis. 2d 779, 785, 484 N.W.2d 331, 333 (1992)). As Stryker points out, the Court of Appeals for the Seventh Circuit made clear in *Lindquist* that under Wisconsin law, neither ground for relief is available where there is an enforceable contract between the parties. *Id.* (citing *Watts v. Watts*, 137 Wis. 2d 506, 405 N.W.2d 303, 313 (1987); *Arjay Inv. Co. v. Kohlmetz*, 9 Wis. 2d 535, 101 N.W.2d 700, 702 (1960)). "Generally speaking, if the parties have made an enforceable contract and there is no ground for rescission, then breach-of-contract principles will govern the dispute." *Id.* Only in the absence of an enforceable contract can obligations be imposed by law. *Id.* (citing *Ramsey*, 168 Wis. 2d at 785, 484 N.W.2d at 333). Therefore, the threshold issue in this case is whether the parties had an express contract or one that could be implied in fact with respect to Carroll's sales quotas and commissions. *Id.* at 481 (noting that implied-in-fact contracts also rely on general contract formation and breach principals).

Stryker asserts that the 2008 compensation plan constituted an express written contract with Carroll regarding how and when he would be paid commissions on his sales. Carroll disagrees, arguing that neither Stryker nor he intended the compensation plan to be a binding

contract.  Instead, he maintains that by its terms, the compensation plan was a flexible and modifiable guideline.  Carroll argues that the compensation plan was not negotiated or signed and that there was no formal offer, acceptance or consideration.  Carroll also points to Stryker's employment handbook, which he asserts incorporates, subsumes or supersedes all of the company's policies, rules and representations related to his employment and stresses that he is an at-will employee not subject to any employment-related contract.

## III. Existence of a Contract

As Carroll indicates, an enforceable contract has three elements: "an offer, an acceptance, and consideration."  *Kamikawa v. Keskinen*, 44 Wis. 2d 705, 710, 172 N.W.2d 24, 26 (Wis. 1969); *McLellan v. Charly*, 313 Wis. 2d 623, 645-46, 758 N.W.2d 94, 105 (Wis. Ct. App. 2008).  The existence of an offer and acceptance are mutual expressions of assent. *McLellan*, 313 Wis. 2d at 645-46, 758 N.W.2d at 105 (citing *Gustafson v. Physicians Insurance Co.*, 223 Wis. 2d 164, 173, 588 N.W.2d 363 (Ct. App. 1998)).   Other than pointing to the fact that the compensation plan was not negotiated or signed, Carroll does not explain why he believes that no offer or acceptance occurred.

An offer is a communication by a party of what it will give or do in return for some act by another.  *In re Lube's Estate*, 225 Wis. 365, 368, 274 N.W. 276, 278 (Wis. 1937).  It must look to the future and "'be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain.'"  *Farnsworth, McKoane & Co. v. North Shore Sav. & Loan Ass'n*, 504 F. Supp. 673, 676 (E.D. Wis. 1981) (quoting *Goebel v. National Exchangors, Inc.*, 88 Wis. 2d 596, 615, 277 N.W.2d

755 (1978)).  No particular form of communication is required—an offer may be made in writing, orally or implied in fact from the conduct of the parties and other circumstantial evidence.  *Goetz v. State Farm Mut. Auto. Ins. Co.*, 31 Wis. 2d 267, 272, 142 N.W.2d 804, 807 (Wis. 1966); *see also Theuerkauf v. Sutton*, 102 Wis. 2d 176, 184-85, 306 N.W.2d 651, 657-58 (Wis. 1981) (contract implied in fact arises from agreement circumstantially proved and requires showing that there was a request to perform services of value); *Household Utils., Inc. v. Andrews Co.*, 71 Wis. 2d 17, 29, 236 N.W.2d 663, 669 (Wis. Ct. App. 1976) (intent of parties "derived from consideration of their words, written and oral, and their actions").  Certainly the written compensation plan referred to by the parties constituted an offer.  Stryker clearly set forth the terms by which it would pay Carroll to perform certain services as part of his employment.

Acceptance of an offer requires "'a meeting of the minds, a factual condition that can be demonstrated by word or deed."  *Zeige Distributing Co., Inc. v. All Kitchens, Inc.*, 63 F.3d 609, 612 (7th Cir. 1995) (citing *Household Utils.*, 71 Wis. 2d at 29, 236 N.W.2d at 669).  Like an offer, an acceptance can be communicated in writing, orally or implied from the parties conduct.  *Morris F. Fox & Co. v. Lisman*, 208 Wis. 1, 240 N.W. 809, 811 (Wis. 1932).  In this case, Carroll received the memorandum from the sales director and worked under it until April 1, 2008.  He even sought to be paid under its terms in the event that he was terminated.  Further, as Stryker points out, Carroll alleges in his complaint that the "2008 compensation plan constituted an implied agreement to pay plaintiff the commissions stated on bona fide orders procured and submitted by him."  Compl. ¶ 17, dkt. 1 at 11.  The fact that Carroll chose to continue working for Stryker as a sales representative after the 2008 compensation plan was issued and expected to be paid a commission constitutes his acceptance.  *Theuerkauf*, 102 Wis. 2d at 185, 306

N.W.2d at 658 (compliance with request to perform services constitutes acceptance); *Ott v. Boring*, 131 Wis. 472, 476-77, 110 N.W. 824, 828-29 (Wis. 1907) (acceptance of employment shown by offeree's beginning performance, complying with offer and accepting salary). Therefore, the fact that Carroll never signed the compensation plan is of no import.  *Zeige Distributing*, 63 F.3d at 612 ("A written agreement may be effective even if both parties have not signed it if the parties otherwise demonstrate their intent to have a contract.").

The third element of a valid contract is consideration, which is evidence of the parties' intent to be bound to the contract, *McLellan*, 313 Wis. 2d at 645-46, 758 N.W.2d at 105 (citing *Gustafson*, 223 Wis. 2d at 173, 588 N.W.2d at 367)), and consists of a benefit to the promisor or a detriment to the promisee, *Beaver v. Mueller*, 263 Wis.2d 431, 662 N.W.2d 678 (Table) (Wis. Ct. App. 2003) (citing *First Wis. Nat'l Bank v. Oby*, 52 Wis. 2d 1, 188 N.W.2d 454 (Wis. 1971)).  In order for mutual promises to furnish consideration for each other and thus create a binding contract, they must impose some legal liability on the persons making them.  *Id.*  There is no consideration where performance is solely at the party's option or discretion, such as when the party is free to either perform or withdraw from the contract at will.  *Id.*

Plaintiff argues that because Stryker reserved the right to change the compensation plan to meet its goals, its adherence to the plan discretionary and non-binding.  *See Devine v. Notter*, 312 Wis. 2d 521, 524-25, 753 N.W.2d 557, 559 (Wis. Ct. App. 2008) (noting that illusory promise is one where promisor has not constrained himself in any way).  However, Stryker was not free to disregard the compensation plan at its whim.  In the absence of a revised agreement, Stryker was bound by the compensation plan and had agreed to pay its sales force according to its terms.  The fact that Stryker reserved the right to change the compensation plan does not

11

make it illusory or unenforceable. Any contract can be discharged or modified by the subsequent agreement of the parties. *Lakeshore Commercial Fin. Corp. v. Drobac*, 107 Wis. 2d 445, 458, 319 N.W.2d 839, 845-46 (Wis. 1982).

Carroll next asserts that Stryker intended all of its policies, rules and representations, including the compensation plan, "to be incorporated or subsumed in or superceded by the employee handbook." Pl. Opp. Br., dkt. 40 at 9. In support, he cites the statement contained in the handbook receipt that the handbook replaces all previous contracts, policies or representations between the parties. However, the compensation plan is not a *previous* contract. Carroll signed the handbook receipt in 2003, five years before the 2008 compensation plan was issued. Obviously, the compensation plan supplemented the handbook with respect to how Stryker would pay sales representatives. Further, the handbook receipt makes clear that the handbook is subject to written revision without notice.

Equally unpersuasive is Carroll's argument that Stryker did not intend the compensation plan to be a binding contract because it had made clear that he was an at-will employee. Employment contracts in Wisconsin are presumed to be at will, meaning that they can be terminated at any time without cause. *Vorwald v. School Dist. of River Falls*, 167 Wis. 2d 549, 482 N.W.2d 93 (Wis. 1992). The compensation plan was not inconsistent with Carroll's at-will status; he still could be terminated at any time for any reason. The plan merely set forth how Stryker would pay Carroll for orders that he procured. The fact that an employee is at will does not mean that the employer and employee can never enter a valid contract related to other aspects of the employee's employment.

In sum, because I find that there was an enforceable contract between Carroll and Stryker with respect to the payment of commissions, Carroll is not entitled to equitable relief. Under Wisconsin law, the only possible claim that Carroll might have had against Stryker for unpaid commissions is breach of contract. Accordingly, his claims of quantum meruit and unjust enrichment must be dismissed.

## IV. Motion to Amend Complaint

Carroll failed to bring a breach of contract claim when he filed this lawsuit in state court on October 2, 2008. After being removed to federal court on January 15, 2009, Carroll did not attempt to add a breach of contract claim by the March 30, 2009 amendment deadline set in this court's February 13, 2009 preliminary pretrial conference order. Recognizing his mistake, he now seeks to add this claim, arguing that Stryker will not be prejudiced because the claim arises out of the same conduct, transactions and occurrences set out in the original complaint. According to Carroll, no additional evidence or argument is required because the issue of breach of contract has been fully addressed in the parties' summary judgment materials.

Stryker opposes the proposed amendment on the grounds that Carroll has failed to show good cause for waiting 12 months to file his motion, and that adding a new claim at this late stage in the lawsuit will result in undue prejudice. I agree.

Whether to grant a party leave to amend its pleadings is a decision left to the district court's discretion. *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998). Although a court should freely grant a party leave to amend its pleadings "when justice so requires," Fed. R. Civ. P. 15(a)(2), a request to amend may be denied on several grounds, including undue delay, undue

13

prejudice to the party opposing the motion or futility of the amendment.  *Sound of Music v.*
*Minnesota Mining and Manufacturing Co.*, 477 F.3d 910, 922-23 (7th Cir. 2007).  As stated in this
court's preliminary pretrial conference order, any motion to amend a pleading after the March
30 deadline would be granted only upon a showing of good cause for the late amendment and
lack of prejudice to the other parties.

        Here, Carroll waited until after Stryker's summary judgment motion was fully briefed
before asking to amend his complaint.  As reason for the delay, he explains only that he "did not
anticipate" that Stryker would allege that the compensation plan constituted a formal contract
given the wording of the handbook receipt.  Carroll's failure to anticipate an obvious and legally
well-grounded defense to his lawsuit does not constitute good cause.  Indeed, under "The Duck
Test," *see Lake v. Neal*, ___ F.3d ___, 2009 WL 3673086 (7th Cir. Nov. 6, 2009), a
commonsensical  review of the relevant documents strongly suggests that this was and is a
contract dispute, not a suit in equity.  To endorse plaintiff's view of good cause would allow a
plaintiff endlessly to spin out his lawsuit as he claimed a mulligan every time his current claims
were proved inadequate.

        This segues to a finding of undue prejudice to Stryker.  Counting state court time, this
case already is over a year old.  The deadline for filing dispositive motions passed long ago,
discovery closes next week and trial is firmly set for January 19, 2010, a mere two months hence.
Carroll asserts that all facts relevant to the resolution of the breach of contract claim are
currently before the court.  Perhaps, but perhaps not; there is no way to know this for certain.
The parties conducted all of their discovery and slogged through an expensive and time-
consuming summary judgment motion process on the basis of Carroll's equitable claims.  It is

14

much, much too late for Carroll to amend his complaint to change his theory of relief to claims that were available and obvious from the outset.

ORDER

IT IS ORDERED that:

(1)   Defendant Stryker Corporation's motion for summary judgment, dkt. 15, is GRANTED.

(2) Plaintiff Matthew Carroll's motion for leave to amend the complaint, dkt. 46, is DENIED.

(3) The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 20th  day of November, 2009.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge